# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CHERYL JOHNSON, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | No. 17 CV 6616 |
| v. | ) | |
| | ) | Hon. Amy J. St. Eve |
| ALLTRAN EDUCATION, LP, | ) | |
| | ) | |
| *Defendant*. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Court Judge:

Plaintiff Cheryl Johnson ("Plaintiff" or "Johnson") brings this action against debt collector Defendant Alltran Education, LP ("Defendant" or "Alltran"), alleging two counts, a violation of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692, *et seq*., and a violation of the Illinois Collection Agency Act (the "ICAA"), 225 Ill. Comp. Stat. 425, *et. seq*. (R. 18, "FAC.") Before the Court is Defendant's motion to dismiss Plaintiff's First Amended Complaint ("FAC"). (R. 22, "Def.'s Mot. to Dismiss.") For the following reasons, the Court grants Defendant's motion to dismiss.

## BACKGROUND

According to the FAC, Plaintiff Johnson is a resident of the state of Illinois. (FAC at ¶ 6.) Johnson allegedly incurred a consumer debt in the form of a consumer credit account with Chase Bank, USA, N.A. (*Id*. at ¶ 11; R. 18-1 at 6, "Debt Letter.") She became delinquent on her debt, her debt went into default, and Chase Bank subsequently retained Alltran for collection of the debt. (FAC at ¶ 6, 12-13.)

Alltran sent a letter to Johnson regarding her debt (the "Debt Letter"), dated April 5, 2017, which constituted Alltran's initial communication with Plaintiff. (*Id*. at ¶ 14, 16-17; Debt Letter.) Plaintiff concedes that the Debt "Letter conveyed information regarding the alleged debt, including the identity of the creditor, an account number, and an amount due," and further that "Defendant provided the required disclosures under § 1692g(a) of the FDCPA." (FAC at ¶ 15, 18.) In a box in the top right corner of the Debt Letter are the details of Johnson's debt:

> Creditor: Chase Bank USA, N.A.
> Account: XXXXXXXXXXXX2355
> Alltran ID: [REDACTED]
> Past Due Amount: $11,255.14
> Partial Account Number for Your Security

(Debt Letter.) A paragraph in the body of the letter reads:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within the thirty day period that the debt, or any portion thereof, is disputed, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days from receiving this notice, this office will provide you the name and address of the original creditor, if different from the current creditor.

("validation notice" or "verification statement"). (*Id*.) A box in the bottom right corner of the Debt Letter provides in part: "If you write to us and ask us to stop communicating with you about this debt, we will, but if you owe this debt, you will still owe it and the debt may still be collected from you," ("communication statement"). (*Id*.) The text in this box goes on to provide contact information for Alltran's Contact Center and Complaint Hotline in case the consumer has "a complaint about the way we [Alltran] are collecting this debt." (*Id*.) The Debt Letter also provides Alltran's general contact information, including the address and telephone number, as well as the extension for the specific agent assigned to Plaintiff's account. (*Id*.)

Plaintiff's FAC alleges two counts: a violation of various sections of the FDCPA and a violation of the ICAA. Before the Court is Alltran's motion to dismiss Johnson's FAC.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citing Fed. R. Civ. P. 12(b)(6)); *see also Hill v. Serv. Emp. Int'l Union*, 850 F.3d 861, 863 (7th Cir. 2017). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014).

When determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017); *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016); *Mann v. Vogel,* 707 F.3d 872, 877 (7th Cir. 2013). In addition to the allegations set forth in the complaint itself, a court weighing a motion to dismiss "may consider documents that are attached to a complaint or that are central to the complaint, even if not physically attached to it." *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 809 (7th Cir. 2018) (citations omitted); *see Mueller v. Apple Leisure Corp.*, 880 F.3d 890,

895 (7th Cir. 2018); *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

## ANALYSIS

Alltran moves to dismiss both counts of the FAC. In Count I, Johnson claims that the Debt Letter violates the FDCPA because: (1) the communication statement overshadows the verification statement, in violation of 15 U.S.C. § 1692g(b), which prohibits overshadowing of or inconsistency with the validation right; (2) the communication statement misleads Plaintiff into believing that Alltran can continue collecting the debt even if she disputes its validity or seeks to verify it, in violation of 15 U.S.C. §§ 1692e and 1692e(10), which prohibit false, deceptive, or misleading representations or means; (3) the communication statement threatens that Alltran can continue collecting the debt even if Plaintiff disputes the debt, in violation of 15 U.S.C. § 1692e(5), which prohibits debt collectors from threatening to take actions they cannot legally take; and (4) the Debt Letter fails to disclose that the "past due amount" is current as of the date of the letter and may increase due to interest, late fees, or other fees, in violation of 15 U.S.C. § 1692e, which generally prohibits false, deceptive, or misleading representations or means. (FAC at ¶ 54-58.) Plaintiff seeks actual damages pursuant to 15 U.S.C. § 1692k(a)(1), statutory damages pursuant to § 1692k(a)(2), and costs and reasonable attorney's fees pursuant to § 1692k(a)(3). (*Id*. at 10.)

In Count II, Johnson claims that Alltran violated the ICAA because "Alltran overshadowed its disclosure of Plaintiff's rights to dispute the validity of the debt and/or request verification within the thirty-day dispute period, in violation of 255 ILCS 425/9.3(b) of the ICAA, when it informed Plaintiff that the alleged debt could still be collected from Plaintiff even

if Plaintiff disputed the debt." (*Id*. at ¶ 60.) Plaintiff seeks compensatory and punitive damages, and costs related to this claim. (*Id*. at 10.) The Court reviews each count in turn.

## I. Fair Debt Collection Practices Act (Count I)

According to well-settled Seventh Circuit precedent, "[c]laims brought under the Fair Debt Collection Practices Act are evaluated under the objective 'unsophisticated consumer' standard." *Gruber v. Creditors' Prot. Serv., Inc*., 742 F.3d 271, 273 (7th Cir. 2014). As the Seventh Circuit has explained, "[o]n the one hand, the unsophisticated consumer may be uninformed, naive, or trusting, but on the other hand the unsophisticated consumer does possess[] rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence and is capable of making basic logical deductions and inferences." *Id*. at 273–74 (citation and internal quotation marks omitted); *see also Boucher v. Fin. Sys. of Green Bay, Inc*., 880 F.3d 362, 366 (7th Cir. 2018). The Seventh Circuit, however, has explicitly stated that "as a matter of law, [a court] shall not entertain a plaintiff's bizarre, peculiar, or idiosyncratic interpretation" under the unsophisticated consumer standard. *McMillan v. Collection Prof'l Inc*., 455 F.3d 754, 758 (7th Cir. 2006); *see Durkin v. Equifax Check Servs., Inc*., 406 F.3d 410, 414–15 (7th Cir. 2005) ("[W]e disregard unrealistic, peculiar, bizarre, and idiosyncratic interpretations of collection letters.") (citing *Pettit v. Retrieval Masters Creditors Bureau, Inc*., 211 F.3d 1057, 1060 (7th Cir. 2000), *Gammon v. GC Servs., L.P*., 27 F.3d 1254, 1257 (7th Cir. 1994)).

The Seventh Circuit views "the confusing nature of a dunning letter as a question of fact," *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007), that, if well-pleaded, avoids dismissal on a Rule 12(b)(6) motion, *see McMillan*, 455 F.3d at 759 ("We have cautioned that a district court must tread carefully before holding that a letter is not confusing as

a matter of law when ruling on a Rule 12(b)(6) motion because district judges are not good proxies for the unsophisticated consumer whose interest the statute protects." (internal quotation marks omitted)). *See also Boucher*, 880 F.3d at 366 ("Because this inquiry involves a fact-bound determination of how an unsophisticated consumer would perceive the statement, dismissal is only appropriate in cases involving statements that plainly, on their face, are not misleading or deceptive." (quotations and citations omitted)). "Nevertheless, a plaintiff fails to state a claim and dismissal is appropriate as a matter of law when it is 'apparent from a reading of the letter that not even a significant fraction of the population would be misled by it.' " *Zemeckis v. Glob. Credit & Collection Corp*., 679 F.3d 632, 636 (7th Cir. 2012) (quoting *Taylor v. Cavalry Invs., LLC*, 365 F.3d 572, 574 (7th Cir. 2004) (internal quotation marks omitted)).

### A.    Alleged Violation of 15 U.S.C. § 1692g(b)

Plaintiff first alleges that the communication statement overshadows the validation notice, in violation of 15 U.S.C. § 1692g(b). (FAC at ¶ 54.) Section 1692g(b) provides:

> If the consumer notifies the debt collector in writing within the thirty-day period…that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period…unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692g(b). According to Plaintiff, the statement about ceasing communication upon request overshadows the meaning of the disclosure that Johnson can dispute the validity of the debt or in general verify the debt because it eviscerates the message, first saying that she has

such a right, and then saying that she still owes this debt and that it can be collected from her. (R. 31 at 3.) Defendant counters that the communication statement in the Debt Letter "only informs the consumer of an additional right to request that Alltran cease communications to the consumer" that does not conflict, overshadow, or otherwise contradict the validity/veracity disclosure under the unsophisticated consumer standard. (R. 22 at 4.) Alltran emphasizes that these rights are separate and consistent, and that the communication statement merely delivers a truism, as allowed by *Taylor v. Cavalry Invs., LLC*, 365 F.3d 572 (7th Cir. 2004). (*Id*. at 5.)

Indeed, consumers have the right under the FDCPA to ask a debt collector to stop contacting them. *See* 15 U.S.C. § 1692c. Specifically, under § 1692c(c), "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt," with a few provided exceptions. 15 U.S.C. § 1692c(c). Likewise, consumers have a right to be free from collection when they challenge a debt under the statute. *Gritters v. Ocwen Loan Servicing, LLC*, 2018 WL 1784134, *8 (N.D. Ill. Apr. 13, 2018) ("Under 15 USC § 1692g(b), a debt collector must cease collection of a debt or any disputed portion thereof if the consumer notifies the collector in writing that she disputes the debt within thirty days of receiving the disclosures required under § 1692g(a).") An unsophisticated consumer, upon careful reading of the Debt Letter, would understand that the communication statement articulates a different and separate right from the verification notice.

The Debt Letter reads: "If you write to us and ask us to stop communicating with you about this debt, we will, but if you owe this debt, you will still owe it and the debt may still be collected from you." The first part of the sentence conveys the communication right—the

consumer may ask Alltran to stop communicating with her about this debt, as provided in §

1692c(c). Alltran warns, however, that even if the communication stops, "*if* you owe this debt,

you will still owe it and the debt *may* still be collected from you." (Debt Letter (emphasis

added).) That language is a statement of a truism, similar to the truisms approved by the Seventh

Circuit in *Taylor*, 365 F.3d 572.[1] While Plaintiff correctly notes that the Seventh Circuit almost

exclusively addressed the narrow topic of violations of § 1692g(a)(1) in *Taylor*, the case supports

the premise that an unsophisticated consumer can understand truisms and that truisms in context

do not distort the message. Here, the unsophisticated consumer understands that she can ask the

collection agency to stop bothering her with calls and letters, but diminished contact with the

debt collection agency does not mean that she no longer owes the debt if the consumer does in

fact owe the debt. Put simply, if the debt is valid, the consumer still owes the money.

Plaintiff twists the words in the Debt Letter, arguing that the letter "fails to clearly

communicate Plaintiff's right to request validation of the debt, and during that time, be free of

communication from the debt collector." (R. 31 at 5.) Johnson further argues that the text of the

Debt Letter leads her, an unsophisticated consumer, "to believe that there is no point to

exercising her rights under the FDCPA if Alltran can continue collecting the debt either way, as

it claims in the [Debt] Letter." (*Id*. at 6.) This is not a reasonable interpretation by an

unsophisticated consumer, but a "bizarre, peculiar, or idiosyncratic interpretation" that the Court

rejects. *McMillan*, 455 F.3d at 758. The plain language of the letter makes clear that Plaintiff

has a validation right to verify the debt as well as a right to ask Defendant to cease

---

[1] The *Taylor* case combined the appeal of two cases, *Taylor v. Cavalry Inv., LLC*, 210 F. Supp. 2d 1001 (N.D. Ill. 2002) and *Schletz v. Acad. Collection Serv., Inc.*, 2003 WL 21196266 (N.D. Ill. May 15, 2003). The Seventh Circuit ruled that the truisms "your account balance may be periodically increased due to the addition of accrued interest or other charges as provided in your agreement with your creditor" and "if applicable, your account may have or will accrue interest at a rate specified in your contractual agreement with the original creditor" did not violate the § 1692g(a)(1) requirement that a debt collector state the amount of debt owed.

communication with her.  Further, Plaintiff continuously misstates that the communication statement is *immediately* after the verification statement, when the verification statement is in the body of the letter and the communication statement is many paragraphs away, in a separate box at the bottom.  (R. 31 at 5 (emphasis added).)  Here, the distance between the two disclosures within the Debt Letter helps the unsophisticated consumer understand each right in its context and prevents her from conflating them.  *See Gruber*, 742 F.3d at 274–75 (analyzing the relative position of statements and disclosures within a debt collection letter in holding that a debt collection agency did not violate the FDCPA); *Farley v. Diversified Collection Servs., Inc.*, 1999 WL 965496, *5 (N.D. Ill. Sept. 30, 1999) (distinguishing the location of certain disclosures when comparing dunning letters).  *See also Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 812 (7th Cir. 2016) ("[A] determination of whether a statement is false, deceptive or misleading, like a determination as to whether a statement is confusing under the FDCPA, is a fact-bound determination of how an unsophisticated consumer would perceive the statement.") (citing *McMillan*, 455 F.3d at 759).

In a case addressed by both parties, *Zemeckis v. Glob. Credit & Collection Corp.*, 679 F.3d 632 (7th Cir. 2012), the Seventh Circuit held that a debt collection letter that used "insistent language and repeated threats of legal action against" the consumer[2] did not overshadow the consumer's 30-day verification right in § 1692g(b).  *Id*. at 634.  Plaintiff argues that the case "sheds virtually no light on the language at issue here" because the allegedly overshadowing language is of a different nature—in *Zemeckis*, it was language of urgency and legal action while here it is the right to limit communication from the debt collector to a few exceptions.  (R. 31 at

---

[2] "In particular, the letter 'urge[d] [her] to take action now,' as well as to '[c]all [Global Credit's] office today....'  It also stressed Capital One Bank's right to pursue legal action against her, warning that '[her] account now meets ... [the] guidelines for legal action' and that 'Capital One Bank (USA), N.A. may be forced to take legal action.' " *Zemeckis v. Glob. Credit & Collection Corp.*, 679 F.3d 632, 634 (7th Cir. 2012).

7.)  While the case is not directly on point, it supports that puffery that creates urgency and truisms that legal action can be taken do not automatically overshadow the verification right. Here, in context, Johnson's right to ask Alltran to cease communication with her does not overshadow her right to verify the debt.

Plaintiff instead attempts to liken this case to *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055 (9th Cir. 2011), in which the Ninth Circuit held that "a literally true statement can still be misleading" in context. *Id*. at 1062.  In addition to not being binding on this Court, that Circuit uses the "least sophisticated debtor" standard while this Court adheres to the "unsophisticated consumer" standard of the Seventh Circuit.  Further, in *this* context, the truism is not misleading to the unsophisticated consumer.  Accordingly, the Court dismisses this aspect of Count I.

### B.     Alleged Violation of 15 U.S.C. §§ 1692e and 1692e(10)

Plaintiff also alleges that the communication statement misleads her into believing that Alltran can continue collecting the debt even if she disputes its validity or seeks to verify the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10).  (FAC at ¶ 55.)  Section 1692e generally provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  The Act goes on to list violating conduct, noting that the list is not exclusive given the general application of the rule.  Section 1692e(10) explicitly prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. § 1692e(10).  "This Court has consistently held that with regard to 'false, deceptive, or misleading representations' in violation of § 1692e of the FDCPA, the standard is…whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable,

consumer." *Bravo v. Midland Credit Mgmt., Inc.*, 812 F.3d 599, 603 (7th Cir. 2016) (citing *Zemeckis*, 679 F.3d at 635; *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009); *Ruth v. Triumph*, 577 F.3d 790, 799–800 (7th Cir. 2009); *Evory v. RJM Acquisitions Funding, L.L.C.*, 505 F.3d 769, 774–775 (7th Cir. 2007); *Sims v. GC Servs. L.P.*, 445 F.3d 959, 963 (7th Cir. 2006); *Turner v. J.V.D.B. & Assocs.*, 330 F.3d 991, 995 (7th Cir. 2003)).

Plaintiff specifically alleges that the Debt Letter gives her the impression that if she "made a written demand to cease communication to Alltran, it could still collect the debt from Plaintiff even if she disputed the alleged debt." (FAC at ¶ 55.) Johnson conflates making a written demand to cease communications with making a written demand disputing the debt and asking for verification. Viewed from the perspective of an unsophisticated consumer, Plaintiff has failed to state an FDCPA claim under § 1692e(2)(a). Plaintiff maintains that "Alltran must stop communicating with Plaintiff in the event that she disputes the alleged debt, at least during the verification period." (R. 31 at 11.) She does not explain, however, how an unsophisticated consumer gleans the opposite from the text of the Debt Letter. While the unsophisticated consumer is uninformed, naive, and trusting, she still possesses a "rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence, and is capable of making basic logical deductions and inferences." *Boucher*, 880 F.3d at 366 (quotations and citations omitted). Although the dunning letter does not explicitly state that Alltran cannot and will not actively collect the debt while it verifies it, the unsophisticated consumer would not read the Debt Letter to imply the opposite.

Further, as Alltran points out, the FDCPA allows a collector to continue collection (and in fact some communication) after a consumer requests the debt collector stop communication. Specifically, the debt collector has a right "to notify the consumer that the debt collector or

creditor may invoke specified remedies which are ordinarily invoked by such debt collector or

creditor" and "to notify the consumer that the debt collector or creditor intends to invoke a

specified remedy." 15 U.S.C. § 1692c(c)(2) and (3); *see Bravo*, 812 F.3d at 602 (The FDCPA

"further requires a debt collector to cease further communication with the consumer, with limited

exceptions not applicable here, once a consumer has notified the debt collector that the consumer

refuses to pay a debt."). Additionally, a debt collector can communicate directly with a

consumer—again, even after the consumer has asked for a cessation of communication—if the

consumer's attorney with respect to that debt "fails to respond within a reasonable period of time

to a communication from the debt collector or…consents to direct communication with the

consumer." 15 U.S.C. § 1692c(a)(2).

Johnson contends that conditional statements can violate the FDCPA even if they are

qualified. While that is a valid argument, *see e.g.*, *Ruth*, 577 F.3d at 793 (finding that the

sentence "To the extent permitted by law, we may collect and/or share all the information we

obtain in servicing your account" violated §§ 1692e(5) and (10) despite its conditional nature),

this is not one of those cases. The conditional statement here captures a truism that while a debt

collector may cease communications on request, it may still collect the debt. This statement does

not interfere with or overshadow the verification right, nor does it mislead or deceive the

unsophisticated consumer. Again, the verification statement and the communication statement

are not side by side in the Debt Letter, with the former in the body and the latter in a box at the

bottom, which allows the unsophisticated consumer to understand them in their separate

contexts. *See Gruber*, 742 F.3d at 274–75. Additionally, the communication statement shares

the box with a sentence about where to report complaints about the way the debt is collected.

Further, even if a statement in a dunning letter "is false in some technical sense," it does not

violate § 1692e "unless it would confuse the unsophisticated consumer." *Evans v. Portfolio Recovery Assocs., LLC*, --- F.3d ---, 2018 WL 2035315, *7 (7th Cir. May 2, 2018) (citing *Wahl*, 556 F.3d at 646); *Boucher*, 880 F.3d at 366. The language of the dunning letter here is not misleading or deceptive to the unsophisticated consumer. Accordingly, the Court grants the motion to dismiss this part of Count I, a violation of the FDCPA.

**C.      Alleged Violation of 15 U.S.C. § 1692e(5)**

Plaintiff next alleges that the language "If you write to us and ask us to stop communicating with you about this debt, we will, but if you owe this debt, you will still owe it and the debt may still be collected from you" violates 15 U.S.C. § 1692e(5). (FAC at ¶ 56.) Section 1692e(5) prohibits a debt collector from making a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Specifically, Johnson contends that the communication statement threatens that Alltran can continue collecting the debt even if Plaintiff disputes the debt, which it cannot legally do.

This case is unlike *Bartlett v. Heibl*, 128 F.3d 497(7th Cir. 1997), where a dunning letter from a debt collector's attorney demands payment within a week while also informing the debtor that he has 30 days to contest the debt. Here there is no confusion, overshadowing, or contradiction. *Id*. at 500. The two rights can and do exist side by side. Nothing in the Debt Letter would suggest to an unsophisticated consumer that Alltran will continue collecting a consumer's debt during a verification request or if the debt turns out to be invalid. An unsophisticated, reasonably intelligent consumer with a rudimentary knowledge about the financial world, and a capacity to make basic logical deductions and inferences would read the collection notice with added care. *See Boucher*, 880 F.3d at 366. An unsophisticated consumer "with a reasonable knowledge of her account's history," *Wahl*, 556 F.3d at 646, would conclude

that she has a right to verify the debt, and would reason that she cannot be liable for a debt—or some portion thereof—that she does not owe. An unsophisticated consumer would also understand that she has the right to ask the debt collection agency to stop the letters, calls, and other communication, but that this will not wipe out a valid debt. "A dollar due is a dollar due." *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009).

The verification and communication statements—again, physically separated in the Debt Letter by multiple paragraphs—describe separate rights. *See Gruber*, 742 F.3d at 274–75 (analyzing the relative position of statements and disclosures within a debt collection letter). The unsophisticated consumer would not read the Debt Letter to mean that Alltran can continue to collect the debt after the consumer requested verification, which Alltran is legally prohibited from doing. The Debt Letter plainly, on its face, is not misleading or deceptive. *Boucher*, 880 F.3d at 366 ("[D]ismissal is only appropriate in cases involving statements that plainly, on their face, are not misleading or deceptive."). Accordingly, the Court grants Defendant's motion to dismiss this part of Count I, a violation of the FDCPA.

### D. Alleged Violation of 15 U.S.C. § 1692e: False Representation of "Past Due Amount"

Plaintiff lastly alleges that the Debt Letter fails to disclose that the "past due amount" is current as of the date of the letter and may increase due to interest, late fees, or other fees, in violation of 15 U.S.C. § 1692e. (FAC at ¶ 57-58.) As already discussed above, § 1692e generally prohibits false, deceptive, or misleading representations or means. "[T]o state a claim under § 1692e, plaintiffs must plausibly allege that [a] dunning letter would materially mislead or confuse an unsophisticated consumer." *Boucher*, 880 F.3d at 366.

Plaintiff suggests two ways in which the dunning letter violates § 1692e. First, Plaintiff reasons that credit card debts generally accrue interest and fees, but points out that her Debt

Letter did not break down the debt nor affirmatively state whether it was subject to interest or fees. In other words, according to Johnson, the dunning letter is misleading and confusing as to whether the debt is fixed or accruing. Second, while the Debt Letter explains that Plaintiff can dispute or pay all or part of the debt, it does not provide a breakdown of the debt so that Plaintiff can determine which portion of the debt, if any, she would like to dispute or pay. Both of Johnson's theories fail.

With regard to her first theory, the Seventh Circuit has stated that a dunning letter seeking payment of a fixed debt only needs to include the amount of the debt and the name of the underlying creditor, and does not need to break down the debt.[3] *See Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944 (7th Cir. 2004). In *Chuway*, the plaintiff filed suit against a debt collector for allegedly violating § 1692g(a)(1) of the FDCPA[4] by calling the total fixed debt amount both a "balance" and a "most current balance." The district court granted summary judgment for the defendant on the ground that there was no clear contradiction or violation of the FDCPA.[5] *Chuway v. Nat'l Action Fin. Servs., Inc.*, 2003 WL 943949, *3 (N.D. Ill. Mar. 7, 2003), *rev'd*, 362 F.3d 944 (7th Cir. 2004). On appeal, the Seventh Circuit reversed and

---

[3] Plaintiff relies on cases "[f]or debts where it is possible that the amount due could vary," and in such cases "it is *mandatory* for the debt collector to disclose how to determine the balance of the alleged debt and other obligations regarding payment." (FAC at ¶ 44 (citing *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000)) (emphasis in original).) The Court, however, agrees with Alltran that *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944 (7th Cir. 2004), not *Miller*, controls here because Johnson's debt is static or fixed. It is appropriate for a district court to apply different Seventh Circuit precedent based on whether the debt is static or variable at the motion to dismiss phase. *See, e.g.*, *Boucher*, 880 F.3d 362 (analyzing *Miller* and *Chuway* when weighing the appeal of a motion to dismiss an FDCPA case).

[4] The Seventh Circuit has held since *Chuway* that satisfying § 1692g(a) usually satisfies § 1692e. *See Boucher*, 880 F.3d at 368-70 (holding that *Miller*'s safe harbor language immunizes debt collectors from liability under §§ 1692g(a) and 1692e as long as the dunning letter accurately states the amount of debt).

[5] While *Chuway* was a summary-judgment decision, the Seventh Circuit's found that the dunning letter—which is strikingly similar to the Debt Letter— on its face was "in the clear" under the FDCPA, save for later confusing language not at issue here. 362 F.3d at 947. Although the Seventh Circuit held that there was an issue of fact as to whether a later part of the letter (which told the recipient she could request her "most current balance") was confusing and misleading, it stated that the defendant complied with the FDCPA by simply noting the amount and the underlying creditor when collecting a fixed balance. *Id.*

remanded, holding that "[i]t is not enough that the dunning letter state the amount of the debt that is due. It must state it clearly enough that the recipient is likely to understand it." *Chuway*, 362 F.3d at 948 (citations omitted). The court reasoned that Chuway's dunning letter would not have violated the FDCPA if it did not reference the "most current balance," implying that more than the amount stated was due. *Id*. at 947.

Here, the FAC's well-pleaded allegations reflect that the underlying debt was fixed, and Plaintiff has not argued otherwise. Indeed, Plaintiff specifically alleges that Defendant provided the required disclosures under § 1962g(a). (FAC at ¶ 18.) That means the dunning letter stated the "amount of the debt." 15 U.S.C. § 1962g(a)(1); *see also Boucher*, 880 F.3d at 368-70 ("[T]he two statutory provisions at issue sometimes overlap: § 1692g(a)(1) requires debt collectors to state 'the amount of the debt,' and § 1692e(2) prohibits debt collectors from making a 'false representation of…the character, amount, or legal status of any debt.' "). While Johnson also alleges generally that credit card debts can be subject to interest and fees, she does not claim that the debt Defendant sought to collect was variable. Specifically, Johnson alleges that interest and other fees could have been charged by Alltran because they could have been charged by Chase Bank and that it would not be unreasonable for her to have expected such charges. She does not, however, allege that Alltran charged her interest and/or fees beyond the past due amount disclosed in the Debt Letter, that more than the past due amount was actually due on the date of the Debt Letter, or that Alltran was ever tried to collect more than the amount disclosed as the past due amount. To the contrary, Johnson instead alleges that Alltran provided the required disclosures under Section 1962(g)(a).

Further, despite Defendant's clear and frequent assertions that the debt was fixed, Plaintiff does not dispute Alltran's characterization of the debt as such in her opposition brief.

*See also Chuway*, 362 F.3d at 947 ("Here—the defendant's lawyer stated without contradiction at oral argument—the *entire* debt that the defendant was hired to collect was the $367.42 listed as the 'balance.'").  Plaintiff does not counter or otherwise address Defendant's characterization of the debt as fixed or static and she thus waives the argument.  *See Steen v. Myers*, 486 F.3d 1017, 1021 (7th Cir. 2007) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority[] are waived.") (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)); *Rose v. Bd. of Election Comm'rs for City of Chi.*, 2015 WL 1509812, *10 (N.D. Ill. Mar. 30, 2015), *aff'd sub nom. Rose v. Bd. of Election Comm'rs for City of Chi.*, 815 F.3d 372 (7th Cir. 2016) (granting motion to dismiss and denying preliminary injunction based on facts not disputed by the plaintiff).

Under *Chuway*, the Debt Letter is not misleading or confusing to the unsophisticated consumer.  *See Barnes v. Advanced Call Ctr. Techs., LLC*, 2006 WL 3386880, *4 (E.D. Wis. Nov. 21, 2006), *aff'd,* 493 F.3d 838 (7th Cir. 2007) ("The letters at issue in the present case stop after simply stating the amount owed, and therefore, in the words of the Seventh Circuit, [the defendant] ACCT is 'in the clear.' ").  It does not cause confusion or misunderstanding about the amount due.  *See Williams v. OSI Educ. Servs., Inc*, 505 F.3d 675, 677 (7th Cir. 2007).  A consumer of reasonable intelligence and with a basic knowledge about the financial world would read the collection notice with added care, and be able to use logic to arrive at the conclusion that she owes $11,255.14 for a debt with Chase Bank according to the Debt Letter.

Alltran accurately stated the amount that it was seeking.  Indeed, the Seventh Circuit has been clear that a credit agency need only request the amount *it* is owed; it need not provide whatever the credit-card company may be owed more than that.  *See Wahl*, 556 F.3d at 647 (affirming district court's grant of summary judgment, based on dunning letter's accurate

17

breakdown of the debt amount the debt collector sought to collect); *Barnes*, 493 F.3d at 840 (distinguishing between money due to a creditor versus a debt collector and holding that a debt collector need not break out principal and interest, but it is enough under the FDCPA to tell the debtor the bottom line); *see also Hahn*, 557 F.3d at 757 (citing *Barnes*, 493 F.3d 838). Plaintiffs' argument to the contrary is inconsistent with *Chuway* and is unsupported by the FDCPA's text.

Johnson's second theory, that the Debt Letter did not include a breakdown of the underlying debt, does not make the letter plausibly misleading or confusing. *Accord Wahl v. Midland Credit Mgmt. Inc.*, 2008 WL 149962, *4 (N.D. Ill. Jan. 10, 2008), *aff'd,* 556 F.3d 643 (7th Cir. 2009) ("Plaintiff's claim is that Defendants improperly failed to detail the components of the debt charged off by BP Amoco. This presumes, however, that the underlying credit card debt is the 'amount of the debt' that must be correctly stated and itemized pursuant to Sections 1692e and 1692g….T]he Seventh Circuit rejected this interpretation in *Barnes*."). The debt at issue here is a simple credit card debt, and Plaintiff does not challenge the "character" of the debt described. *Cf. Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004). The letter, moreover, clearly informs Plaintiff of the balance owed, and of her communication and verification rights. "[I]t is compliance with the statute, not our suggested language, that counts." *Williams*, 505 F.3d at 680. Requiring a credit agency to itemize a debtor's credit card bills (itemizations which the Complaint does not even allege that Defendant has) simply because it informs the debtor of her communication and verification rights would be counterproductive. Even an unsophisticated customer has a "reasonable knowledge of her account's history," *Wahl*, 556 F.3d at 646, and if Johnson did not recall the details of her account, an unsophisticated customer nevertheless would have pursued the avenues offered to verify the debt.

Regardless of what Johnson may have believed about her credit card loan at Chase Bank, she received a dunning letter from Alltran that notified her of the "past due amount" with Alltran. If Alltran was not collecting beyond this amount, Alltran is not required by statute to explain the underlying debt to Plaintiff. "The FDCPA does not require…[the debt collector] to note that an amount will not increase; there is no requirement that every statement in a debt collection notice include an extra assurance that the fact stated *will not* change in the future." *Delgado v. Client Servs., Inc.*, 2018 WL 1193741, *4 (N.D. Ill. Mar. 7, 2018) (emphasis in original) (quotations and citations omitted) (finding that the plaintiff failed to state a claim under § 1692e). The Court will not read an extra requirement into the statute. *See Neff v. Capital Acquisitions & Mgmt. Co.*, 352 F.3d 1118, 1121 (7th Cir. 2003) ("Neither Congress nor the Federal Reserve made the policy choice here to extend the duty to send monthly statements to purchasers of delinquent accounts, and it is not our role to read such a requirement into the statute.").

Nothing in the Debt Letter misleads or deceives the unsophisticated consumer into thinking that she may owe more or less than the balance as stated and dismissal is only appropriate in "cases involving statements that plainly, on their face, are not misleading or deceptive." *Boucher*, 880 F.3d at 366 (citations omitted); *see Delgado*, 2018 WL 1193741 at *4 ("The question here is whether the Letter states the amount of the debt clearly enough so that an unsophisticated consumer would not misunderstand it."). "Consideration of the Letter as a whole reinforces the fact that it is not misleading. There is no suggestion that the amount due will change if the balance is not paid within a certain period of time and no other mention of interest and other charges." *Delgado*, 2018 WL 1193741 at *4. Even reviewing the allegations in the light most favorable to Plaintiff, the letter states the amount of debt "clearly enough that

the recipient is likely to understand it." *Williams*, 505 F.3d at 677. As such, the Court grants

Defendant's motion to dismiss this part of Count I.

## II.     Illinois Collection Agency Act (Count II)

Johnson claims that Alltran violated the ICAA because "Alltran overshadowed its

disclosure of Plaintiff's rights to dispute the validity of the debt and/or request verification within

the thirty-day dispute period, in violation of 255 ILCS 425/9.3(b) of the ICAA, when it informed

Plaintiff that the alleged debt could still be collected from Plaintiff even if Plaintiff disputed the

debt." (FAC at ¶ 60.) Section 425/9.3(b) of the ICAA provides:

> If the debtor notifies the collection agency in writing within the 30-day period…that
> the debt, or any portion thereof, is disputed or that the debtor requests the name and
> address of the original creditor, the collection agency shall cease collection of the
> debt, or any disputed portion thereof, until the collection agency obtains verification
> of the debt or a copy of a judgment or the name and address of the original creditor
> and mails a copy of the verification or judgment or name and address of the original
> creditor to the debtor.

225 Ill. Comp. Stat. 425/9.3(b). Defendant moves to dismiss this claim on three grounds.

(Def.'s Mot. to Dismiss at 11-12; R. 32 at 6-7.) First, Alltran disputes that the ICAA provides a

private right of action, citing *Skinner v. LVNV Funding, LLC*, 2018 WL 319320, *1 (N.D. Ill.

Jan. 8, 2018). (R. 32 at 6.) Second, assuming that a private right of action exists, Alltran argues

that Plaintiff has not pled actual damages, a necessary element to maintain a claim under the

ICAA. (Def.'s Mot. to Dismiss at 11-12; R. 32 at 6-7.) Third and finally, Alltran posits that the

Court must reject Plaintiff's argument for the same reason that her argument about

overshadowing under the FDCPA fails above. (Def.'s Mot. to Dismiss at 11.)

### A.     Private Right of Action

Plaintiff concedes that "[c]ourts in this district are split on whether a private right of

action for damages is implied under the ICAA," and further that "the Supreme Court of Illinois

has not directly addressed whether there is a private right of action under § 9, or any other provision of the ICAA." (R. 31at 14.) Plaintiff largely points to *Sherman v. Field Clinic*, 74 Ill. App. 3d 21 (Ill. App. Ct. 1979), and several Northern District of Illinois cases relying on *Sherman* for the proposition that the ICAA establishes a private right of action. (*Id*.)

The Court must follow Illinois law in interpreting the ICAA. *Houben v. Telular Corp.*, 309 F.3d 1028, 1032 (7th Cir. 2002) (applying state substantive law when federal courts consider state law claims under supplemental jurisdiction). Because the Illinois Supreme Court has not addressed the issue of whether § 9.3 of the ICAA creates a private cause of action, the Court must use its "best judgment to estimate how the [Illinois] Supreme Court would rule as to its law." *Valerio v. Home Ins. Co*., 80 F.3d 226, 228 (7th Cir. 1996). Despite Johnson's reliance on the case, *Sherman* is a state appellate decision—and a 40 year old decision at that—without a binding effect on the Court discussing § 9 of the ICAA.[6] While the Court must give weight to state appellate decisions when the state Supreme Court has not spoken on an issue of state substantive law, the court may decline to follow such a decision when "there are persuasive indications that the highest court of the state would decide the case differently." *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1088 (7th Cir. 2016) (citing *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002)); *Commonwealth Ins. Co. v. Stone Container Corp.*, 323 F.3d 507, 509 (7th Cir. 2003) ("But in the absence of guiding authority from the state's highest court, we give great weight to the holdings of the state's intermediate appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently from the decision of the intermediate appellate court.") (quotations and citations omitted).

---

[6] Section 9 of the ICAA lists possible disciplinary actions for violations of the ICAA. 225 Ill. Comp. Stat. 425/9.

The Court is persuaded that the Illinois Supreme Court would not recognize a private cause of action under § 9.3 of the ICAA, for similar reasons that other judges in this District have reached this conclusion. *See, e.g.*, *Skinner v. LVNV Funding, LLC*, 2018 WL 319320, *4 (N.D. Ill. Jan. 8, 2018) ("As set forth below, we find the conclusion in *Eul*, which takes into account the state of contemporary Illinois law, carefully reasoned and persuasive, and find no implied private right of action under § 9 of the ICAA."); *Eul v. Transworld Sys.*, 2017 WL 1178537, *17 (N.D. Ill. Mar. 30, 2017) ("[There are] numerous persuasive indications that the Illinois Supreme Court would depart from *Sherman* and find no implied private right of action under § 9."). *See also Galvan v. NCO Fin. Sys., Inc.*, 2016 WL 792009, *6 (N.D. Ill. Mar. 1, 2016) ("For all of these reasons, the Court finds that the ICAA does not imply a private right of action for debtors to sue for damages when a collection agency violates section 4.").

Section 9.3 does not expressly authorize a private right of action, nor can a private right of action be implied here for the five reasons discussed in *Skinner* and *Eul*. First, *Sherman* was decided about 40 years ago and found that § 9, not the section at issue here, created a private cause of action. No Illinois appellate court has found that before or since—either for § 9 or § 9.3. Further, several Illinois circuit courts have in fact declined to follow *Sherman* and have dismissed private actions seeking to enforce the ICAA. "*Sherman* is an anomaly in Illinois circuit and appellate court law." *Skinner*, 2018 WL 319320 at *5.

Second, in *People ex rel. Daley v. Datacom Sys. Corp.*, 585 N.E.2d 51 (Ill. 1991)—a more recent case than *Sherman*—the Illinois Supreme Court suggested in dicta that no implied private right of action exists to enforce violations of the ICAA. In *Datacom*, the Cook County State's Attorney, on behalf of Illinois citizens, sued the City of Chicago and a city vendor that helped collect delinquent parking tickets, alleging that the vendor violated various ICAA

provisions. *Id.* at 54-55. The Illinois Supreme Court noted that "only the Department [of Financial and Professional Regulation ("DFPR")] had standing to pursue civil violations of the ICAA." *Id.* at 62. While the statement is dictum because the state's complaint ultimately sought relief under a different statute, it is nevertheless a persuasive indication that the Illinois Supreme Court would find no implied private right of action in § 9.3 of the ICAA.

Third, *expressio unius est exclusion alterius* ("the expression of one thing is the exclusion of another") guides statutory interpretation in Illinois. *Skinner*, 2018 WL 319320 at *5 (citing *Martis v. Pekin Mem'l Hosp. Inc.*, 917 N.E.2d 598, 604 (Ill. App. Ct. 2009) (interpreting *expressio unius* to mean, "[w]hen certain things are enumerated in a statute, that enumeration implies the exclusion of all other things even if there are no negative words of prohibition")). When the legislature expressly authorizes an entity to enforce the provisions of a statute, there is no private right of action. "In recent cases where the Illinois Supreme Court has explored whether a private right of action should be implied from a statute, it has explained that 'when a statute grants a state official broad authority to enforce the statute…it indicates the legislature's intent not to imply a private right of action for others to enforce the statute.' " *Eul*, 2017 WL 1178537 at *17 (quoting *Metzger v. DaRosa*, 805 N.E.2d 1165, 1172 (Ill. 2004) (finding no implied private right of action under Illinois whistleblower statute)); *see also Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979) ( "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."). Section 9 expressly gives the Department the right to enforce the ICAA with listed disciplinary actions.

Fourth, the Illinois legislature has expressly provided for a private right of action in other ICAA sections. The Illinois Supreme Court has explained that "[w]here…the legislature has

expressly provided a private right of action in a specific section of the statute, we believe the legislature did not intend to imply private rights of action to enforce other sections of the same statute." *Metzger*, 805 N.E.2d at 1172. Here, § 14a of the ICAA expressly provides a private right of action; it authorizes "any person" to pursue injunctive relief against collection agencies that operate in Illinois without a license. 225 Ill. Comp. Stat. 425/14a ("The Secretary, the Attorney General, the State's Attorney of any county in the State, or any person may maintain an action in the name of the People of the State of Illinois ... to enjoin such entity from engaging in [the unlicensed practice as a collection agency]."). Such an express authorization in one section of the statute but not in another suggests that the legislature did not imply a private right of action to enforce other sections.

Fifth and finally, the ICAA expressly adopts Illinois' Administrative Review Law ("ARL"), as part of its statutory framework, for review of the DFPR's final administrative decisions. 225 Ill. Comp. Stat. 425/26(a) (Section 26 of the ICAA provides that these disciplinary actions "are subject to judicial review under the Administrative Review Law and its rules."). The Illinois Supreme Court has explained that "[w]here the statute creating or conferring power on an administrative agency expressly adopts the Administrative Review Law, a circuit court has no authority to entertain an independent action." *Metzger*, 805 N.E.2d at 1171; *see also Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985). This principle, which applies here to the ICAA, is another persuasive indication that the Illinois Supreme Court would not imply a private right of action under § 9.3. As such, the Court grants Defendant's motion to dismiss Count II, a violation of the ICAA, because § 9.3 of the ICAA does not establish a private cause of action. The Court does not address the damages argument because the private cause of action issue is dispositive.

**B.**      **Overshadowing of Verification Right**

Finally, the Court would still dismiss Count II. The language of the FDCPA mirrors the language of the ICAA. For the reasons already stated above in the FDCPA discussion, the Debt Letter's communication statement does not overshadow the verification statement. Accordingly, the Court grants Defendant's motion to dismiss Count II, a violation of the ICAA.

**CONCLUSION**

For the foregoing reasons, the Court grants Defendant's motion to dismiss without prejudice.

**Dated:** May 7, 2018                      **ENTERED:**

                                           **AMY J. ST. EVE**
                                           United States District Court Judge